## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

**RODNEY HENRY**                                                                      **PLAINTIFF**
**Reg. #33027-009**

**v.**                                    **No: 3:22-cv-00186-PSH[1]**

**STEVE FRANKS, *et al.***                                                         **DEFENDANTS**

## MEMORANDUM AND ORDER

### I.  Introduction

Plaintiff Rodney Henry initiated this lawsuit by filing a *pro se* complaint pursuant to 42 U.S.C. § 1983 on July 21, 2022, while he was a pretrial detainee held at the Greene County Detention facility (Doc. No. 2).[2]  He subsequently filed an amended complaint (Doc. No. 8).  Both complaints were served on Defendants Steve Franks and Robert Case (the "Defendants").  *See* Doc. No. 9.  Henry alleges his due process rights were violated when he was assigned to punitive segregation (also referred to as "lockdown") with no disciplinary hearing in May and October of 2021.  *See* Doc. No. 8.

---

[1] By consent of the parties, this case was referred to a United States Magistrate Judge to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  *See* Doc. No. 18.

[2] Henry is currently incarcerated at the Lee U.S. Penitentiary.  *See* Doc. No. 40.

The Defendants filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to judgment as a matter of law on the merits of Henry's claims (Doc. Nos. 26-28).   Henry was notified of his opportunity to file a response and a separate statement setting forth disputed facts he believes must be decided at trial as required by Local Rule 56.1, Rules of the United States District Court for the Eastern District of Arkansas.   Henry filed a "Disagreement of Defendant's Statement of Undisputed Facts" (Doc. No. 32) and what appears to be a response to the affidavit of Sheila Robertson (Doc. No. 33).[3] At the Court's direction, the Defendants were directed to supplement the record in this case with additional briefing regarding the constitutionality of the Greene County Detention Center's due process procedure.   *See* Doc. No. 48.  In response, Defendants filed a supplement (Doc. No. 51) and an additional affidavit by Robert Case (Doc. No. 51-1).  Henry was given an opportunity to respond but has not done so.

The Defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute with respect to Henry's claims against the Defendants in their individual capacities, and they are entitled to

---

[3] Henry also filed a motion for summary judgment and brief in support (Doc. Nos. 30-31).   Defendants filed a response to that motion (Doc. No. 39).   The Court denied Henry's motion because he provided no evidence with his motion and did not submit a separate statement of undisputed facts as required by Local Rule 56.1.  *See* Doc. No. 49.

judgment as a matter of law on those claims.  However, because there remain issues of fact as to Henry's official capacity claims, the Defendants' motion for summary judgment is denied in part, and those issues will proceed to trial.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986).  When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, and must instead demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.* (citations omitted).

An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials

. . .".  Fed. R. Civ. P. 56(c)(1)(A).  A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

In *Reed v. City of St. Charles, Mo.*, 561 F.3d 788 (8th Cir. 2009), the Eighth Circuit Court of Appeals discussed the requirement that facts be viewed in the light most favorable to the nonmoving party when considering a motion for summary judgment.  The Court stated, "[i]f 'opposing parties tell two different stories,' the court must review the record, determine which facts are material and genuinely disputed, and then view those facts in a light most favorable to the non-moving party—as long as those facts are not so 'blatantly contradicted by the record . . . that no reasonable jury could believe' them."  *Id.* at 790 (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.  Complaint Allegations

In his Complaint, Henry alleged:

I Plaintiff Rodney Henry sometime in May of 2021 was placed in punitive segregation for disciplinary infractions upon arriving in segregation immediately my mat and blanket was taken.  When the officer read my disciplinary, I was never issued an advanced written notice of disciplinary charges, a hearing or opportunity to be heard, nor a written statement of the evidence relied upon and the reasons for the disciplinary action.  The oral disciplinary notice failed to contain adequate information, specifically the name of the allege victim, a general time and general location which precluded the plaintiff from defending himself in a meaningful manner.  Because of no written notice being issued, this denial of non-issuance of evidence caused a chilling effect that kept me from signing the so called 'due process papers.'  On this particular instant, the plaintiff served 30 days in lock down Also on 10.7.21 – 12.7.21 I was placed again in punitive segregation for disciplinary infractions.  The same procedure was performed exactly as in the first paragraph.  On this second incident I served 60 days in lockdown.

It is a common practice and custom for Greene County Detention Center officers and/or staff to deliberately and purposely violate inmates constitutional rights to due process by punishing inmates for facility rule violations without the opportunity to call witnesses and present documentary evidence.  The function of a 24 hour advance written notice is to give the charged party a chance to marshall the facts in his defense and clarify what the charges are, in fact. Although the Greene County Handbook at page 3 Chapter 1 Mission (see Exhibit 1) references the recognition and enforcement of statutory, judicial and constitutional rights of all person in a fair and impartial manner, detention officers fail to follow their own policies and procedures regarding inmate disciplinary and lockdown (see: Greene County Handbook Chapter 28, disciplinary procedures, Exhibit 2, Chapter 31, types of lockdown, Exhibit 3) Much less the laws and rights indicated above and cited in the Handbook.  Specifically it is the normal practice and custom for Greene County Detention officers to engage in the following process when an inmate is initially found to have violated a facility rule. As follows

Step 1: inmate is identified of violating a facility rule by a DO. Step 2: inmate is ordered to pack his belongings and placed in punitive lockdown status.

Note: A) punitive lockdown status consists of 23 hour lockdown in a two man cell. B) removal of mattress and blanket from 6:30 a.m. and returned at 10:30 p.m. C) one (1) hour a day, out of cell, to shower and day room recreate, no phone calls are allowed, contrary to what's indicated in the handbook.

Step 3: Officers bring and read a so called "due process form" within a 24 hour period and do not provide you with a copy. The officer explains to you what it says and encourages you to sign the waiver portion of the form so that you can get out of lockdown sooner.

Note:  An inmate is placed in punitive lockdown for "any and all" violations, no matter if the violation is the lowest violation cited de minimis in addition, officers explain that if you fight the violation and request a hearing, it will take longer to get out of punitive lockdown and you will not get out of lockdown until after the hearing.  (If there is a hearing.)  Most inmates sign the waiver out of coercion.

Note:  The ones who do sign the Due Process form requesting a disciplinary hearing do not get a disciplinary hearing any way.

Note:  All inmates are already being punished before any kind of due process procedures are being afforded by being placed in punitive lockdown status without a mattress and blanket upon arrival in segregation.

Note:  If a so called "Hearing" is conducted, it is without the presence of the inmate and in a secretive, bias, arbitrary, and capricious manner giving extreme weight to the charging officers statements, with no opportunity to be heard, present evidence, present witnesses, and without being provided with a copy of a written statement of the evidence relied upon and reason – for the actions taken.

Step 4: Inmate is released from punitive lockdown into general population upon completion of sanctioned time in lockdown imposed.

No copy of any "due process form" or reasons for the actions taken are provided. . . . .

Doc. No. 2 at 4-7.[4]

Henry further alleged:

It is the common practice and custom for the officers to engage in such punitive mistreatment and it is clearly obvious that the facility lacks the proper training of officers in regards to this particular issue.

Proper training of D.O's is vital and critical in order to safeguard inmates constitutional rights and protects and maintains all other Detention facility interests. It also must be noted the Disciplinary Procedures that are outlined and described in the Greene County Detention Center's handbook are not constitutional because it does not provide for written statements of notice of Disciplinary infraction, fails to provide a hearing or an opportunity to be heard, nor a written notice of Disciplinary actions taken. (See Handbook Ch. 28, Disciplinary Procedures "Exhibit 2, Ch. 31 Types of lockdown "Exhibit 3) These procedure, or lack thereof, help contribute to the "Good Ol' Boy system" that is the current practice and custom and any inmate at anytime can get thrown into Segregation under punitive lockdown for any infraction without the opportunity to a defense or opportunity to be heard. An Impartial Adjudicator is also essential for a Constitutional Due Process Procedure. Pre-Trial detainees cannot be subjected to any type of punishment without being afforded Proper Due Process Procedures and sentenced inmates should also be given those same procedural safeguards.

*Id.* at 7-8.

In his amended complaint, Henry alleged:

Defendant, Robert Case
May 2021 when Plaintiff served 30 days for disciplinary infractions, at that time Robert Case was the new jail administrator of Greene County

---

[4] All documents are transcribed verbatim without any corrections for misspellings or mistakes.

Detention Center. Robert Case was also responsible for all inmates at the Greene County Detention Center, being the jail administrator of Greene County Detention Center gives Robert Case order to safeguard inmates constitutional rights and protects and maintaining all other detention facility interests. Well in this case Robert Case failed to protect my constitutional rights to due process, by not give plaintiff a proper due process procedure. Which included plaintiff being offered a chance to plead his case in presence of staff, no inmate at Greene County Detention Center is given a disciplinary hearing. Robert Case is violating Plaintiff's rights by not giving Plaintiff a disciplinary hearing. If a disciplinary hearing were to be given Plaintiff would've been given a better chance to exercise his rights and plead and present his case. But no hearing is conducted but it is being conducted out of inmates presence, giving extreme weight to the charging officers statement. Again Robert Case continues to violate Plaintiff's rights by not properly training his officers/staff to protect my constitutional rights to due process and disciplinary hearing. Robert Case is responsible and liable in his official capacity and personal capacity. The same occurrence happened October 7th where Plaintiff served 60 days with his constitutional rights being violated. Neither time did Plaintiff get a written statement of the evidence relied upon and a copy of reasons for the disciplinary action the oral disciplinary notice failed to contain adequate information.

Doc. No. 8 at 1.

Defendant, Steve Franks.
May 2021 when Plaintiff served 30 days for disciplinary infractions at that time Steve Franks was the sheriff of Greene County. Steve Franks was liable and responsible of Plaintiff welfare and livelihood being a sheriff of the County the sheriff is responsible for all inmates in that county. Steve Franks failed to protect Plaintiff constitutional rights, by not properly training his staff at the Greene County Detention Center. By Steve Franks not properly training officers or staff on due process and disciplinary hearings, inmates such as Plaintiff falls victim to the lack of procedures. The proper exercise rights to due process and disciplinary hearings are not met at Greene County Detention Center, Steve Franks is responsible in his official and personal capacity. Steve Franks involvement is liable and is clearly violating Plaintiff's constitutional rights to due process and the same occurrence happened

October 7th were Plaintiff served 60 days with his constitutional rights being violated.

*Id.* at 2.

## IV.  Facts[5]

On or about December 11, 2019, Plaintiff, Rodney Henry, was booked into the Greene County Detention Center ("GCDC") on first degree murder and robbery charges.  Doc. No. 28-2, *Henry's Arrest and Booking*, at 1.

### *May 13, 2021 Incident*

On May 13, 2021, Corporal Dylan Works authored an incident report, stating:

On the day of 5/13/21 at approximately 07:10am I was in central helping do cell checks.  I heard Nurse Bailey Burns yell "dylan their fighting" i ran towards the Nurse in north rounded the corner and saw Ofc. Josh Young pulling inmate Rodney Henry out of North 3 pod.  I entered the pod and told the inmates to lockdown, Inmate Lyron Johnson handed me North Keys.  Myself and Ofc. Wade Caldwell assisted Inmate Steven Halfacre to the wall.  Medical requested him come to a med cell to have his face cleaned, We escorted Halfacre to medical without further incident.  I have nothing further to report.

Doc. No. 28-4, *Incident Reports,* at 1, 4.  Officer Young authored an incident report,

stating:

---

[5] These facts are taken from the Defendants' Statement of Indisputable Material Facts (Doc. No. 28), and the documents and records attached.  Henry did not specifically dispute any of the facts asserted by the Defendants in his Disagreement of Defendant's Statement of Undisputed Facts (Doc. No. 32), apart from generally alleging that inmates who do not waive their right to due process are not in fact afforded a hearing, which is undisputed.  He also argues that due process requires more than that provided by the GCDC.

AT APPROXIMATELY AT 7:10 5/13/2021 B-DAY SHIFT I; OFFICER YOUNG HAD STARTED CLEAN UP IN N3. UPON ENTERING THE POD, I VERBALLY AND MOTION THE INMATES TO GET ON THE WALL FOR CLEAN UP SO THE TRUSTEES COULD BRING IN THEIR CLEANING SUPPLIES. AS THE TRUSTEES GOT STARTED INMATE STEVEN HALFACRE (CELL N3-06 NOW MOVED TO N5-05) ASKED ME THE QUESTION HEY ARE YOU GOING TO DO A WALK THROUGH LIKE YESTERDAY?′IN MY REPLY TO INMATE HALFACRE I SAID DON'T KNOW YET, YES MAYBY WILL SEE. HALFACRE THEN ASKED AGAIN WITH THE SAME QUESTION AND I REPLIED DIFFERENTLY SAYING TO HIM WAIT A MINUTE. HE WOULD GO ON TO ASK THE SAME QUESTION AGAIN I THIS TIME DID NOT REPLY TO HIM INMATE LYRON JOHNSON (CELL N3-11) RESPOND TO HIM SAYING THE OFFICER MAN HE JUST TOLD YOU WE WILL SEE. HALFACRE GOT AGGRESSIVE TOWARD JOHNSON YELLING AND GETTING IN HIS FACE WITH HIS POSTURE TO FIGHT JOHNSON INMATE RODENY HENRY (CELL N3-02) GOT OFF THE WALL AND TRIED TO GET HALFACRE TO STEP BACK FROM JOHNSON HALFACRE WOULD THEN STEP INTO HENRYS FACE.  THATS WHEN I STEP IN ORDERING THE INMATES TO HEY; HEY; STOP; GET BACK AND ON THE WALL.  THE TRUSTEES THAT WERE ALREADY IN THE POD WITNESS HALFACRE POKE HENRY CAUSING HIM TO THROW THE FIRST PUNCH AND REPEATED PUNCHES AT HALFACRE.  AT THE FIRST PUNCH I GRAB HENRY FROM BEHIND UNDER HIS ARMS REACHED FOR MY RADIO CALLING ALL AVAILABLE OFFICERS TO NORTH WHILE PULLING HIM AWAY AND, ON THE GROUND, AWAY FROM HALFACRE.  IN THE STRUGGLE OF PUT HERNY ON THE GROUND I; OFFICER YOUNG JOSHUA WILL ADMIT TO LOSING CUSTODY OF NORTH KEYS WHILE VISIBLY SEEING WHERE THEY FELL, I HAD ALREADY RESTRAINED HENRY BY MY ARMS AND DIDN'T WANT TO RISK LETTING GO OF HIM BUT THE KEYS WERE RECOVERED AND BACK IN MY CUSTODY. WHEN FELLOW OFFICER ARRIVED TO N3 I RUSHED HENRY OUT OF THE POD AND ON THE WALL TO PUT HANDCUFFS ON HIM AND ESCORTED TO S8 LOCK DOWN (CELL S8-03) BY OTHER OFFICERS AND HALFACRE

WAS TAKEN TO MEDICAL FOR TREATMENT ON HIS LEFT
EYE AND A POSSIBLE BROKEN NOSE WHILE HENRY
SUSTAINED A BROKEN RIGHT RING FINGER.   I HAVE
NOTHING FURTHER TO REPORT AT TIME

*Id.* at 2.

On May 13, 2021, Henry was given a due process form providing notice that

he was charged with violation of "[Rule] A7: Assault or batter anyone else, including

fighting," which would result in a 30-day disciplinary sanction.  *Id.* at 6.  Rather than

marking the box "I choose to exercise my right to due process," Henry marked the

box stating: "I choose to waive this right."  *Id.*  There is an illegible signature above

the line for the inmate's signature.  *Id.*  The same day, he was transferred from cell

N3-02 to cell S8-03.  Doc. No. 28-5, *Housing Logs*, at 1.

On May 19, 2021, Henry submitted a grievance, stating: "cani get out the 8

days early im sorry."  Doc. No. 28-3, *Requests and Grievances*, at 1.  On May 21,

2021, Lt. Alicia Hubble responded: "this is not a grievance."  *Id.*  On May 26, 2021,

Plaintiff submitted a general inquiry, stating: "can i get out the home early? im

deeply sorry i been here 2 years now im not a trouble to nobody im actually a model

inmate could you so compansion on me and let me out next week."  *Id.* at 2.  It

appears Henry received no response.  *Id.*

On June 11, 2021, Henry was moved from cell S8-03 to cell N8-01.  Doc. No.

28-5, *Housing Logs*, at 1.  He was housed in cell N8-13 from July 24, 2021, through

October 16, 2021.  *Id.*

### *October 16, 2021 Incident*

On October 16, 2021, Sergeant Kelley authored an incident report, stating:

> At approximately 3:30pm on 16 October 2021, I Sgt. Kelley along with
> Ofc. Yeargain conducted a shakedown in N8. Within the entire pod we
> found multiple altered e-cigs in the cells, 4 extra rags, 16 extra pants,
> 15 extra shirts, 11 extra blankets, 11 extra wash cloths and 18 extra
> towels. Cell 11 we found 4 full bags of commissary belonging to
> Theodis Dixson and approximately 50 extra rolls of toilet paper. I am
> recommending locking the entire pod down for 24 hours. I took 2
> commissary bags belonging to Theodis Dixson and placed them in
> Felisha's office since inmates are only allowed to have 2 bags on them
> at one time. I have nothing further to report at this time.

Doc. No. 28-4, *Incident Reports*, at 7.  The same day, Henry was given a due process

form providing notice that he was charged with violation of "A4: "Intimidating,

harassing, threatening, or extorting another inmate or officer," and was to be placed

on disciplinary for 30 days.  *Id.* at 12.  On the form, he marked "I choose to exercise

my right to due process" and signed his name.  *Id.*  The record does not make clear

what Henry did to incur this charge after the shake-down in his cell pod.  However,

in response to the charge, he wrote the following on an Inmate Disciplinary Due

Process Statement Form:

> I Didn't mean for that to happen I wasn't trying to harm nobody but I
> was upset that my pictures was taken from me when I first got here it
> was okay for us to have them, I've been here almost 3 years, I never
> once tried to hurt a police Im a model inmate I just lost my
> cool…..Currently I've been locked up 4 years the feds wanna give me
> the death penalty but im innocent, Im going to trial in a couple months
> so I've been under a lot of stress, I hope you can accept my apology
> and let me out sooner than 30 days, My pictures is all I have, its pictures
> of my children. I always keep my cool but matters like my kids its hard

to control. Please can we make this matter go away. Im sorry and I understand what has [illegible] Can I do 7 days to cool off and humble [illegible] down and get out I really don't need this matter popping up when I got to court. lord god bless be with me at the police let us get an understanding and peace let your will be done Amen. Come on Cody.

. . .

Cody, This is not me to be aggressive and wicked, you know I've never been dangerous with the guards but honestly I've been sad, depressed and stressed because my trial is in a few months. My charges carries life or death. Right now it look like Im battling for my life as we speak so this is why I've been tripping about my pictures I'm sorry but my kids are my happiness and all I have and today their pictures were taken. I could have handled this better but I didn't, but can I have a chance to get out sooner? Even if I don't get the pictures back. I'll be humble and grateful, can you consider letting me out the hole? I could use a few days to cool off and humble myself down so [illegible] Can 7 days be enough?

I don't wont this to pop up in Court. Wont look good on me.

*Id.* at 8-11.  Henry received a 30-day sanction and was to be released from lockdown on November 15, 2021.  *Id.* at 12.  He was moved to cell N5-11 that day.  Doc. No. 28-5, *Housing Logs,* at 1.

On October 19, 2021, Henry submitted a grievance, stating: "felisha Rowland look at my due process i know its something you can do about this 30 days their tryna give me."  Doc. No. 28-3, *Requests and Grievances*, at 3.  On October 25, 2021, Felisha Rowland responded: "I'm sorry I can not. You can put request into Dane Barnum Or Robert Case. I have nothing to do with due processes."  *Id.*

*October 21, 2021 Incidents*

On October 21, 2021, at 12:59:00 p.m., Lt. Dane Barnum authored an incident report, stating:

> On 10/21/21 I Lt. Dane Barnum was informed by officer Morgan Robinson that there were holes poked in the magnets in lockdown. He informed me that he physically witnessed inmate Rodney Henry poke a hole in his. When I reviewed camera, I witnessed Henry tamper with his magnet and cell N5-3. Both magnets had holes punctured into them and were brand new. I recommend 7 days for Destroying, defacing, altering, or tampering with existing facility property, including doors, walls, fixtures, security devices, structure, or other parts of the Detention Center and then an additional 15 days for second offense Destroying, defacing, altering, or tampering with existing facility property, including doors, walls, fixtures, security devices, structure, or other parts of the Detention Center. Henry will be charged for both magnets. $50 for his and $50 for N5-3. I have nothing further to report at this time.

> On 10/21/21 I Lt. Dane Barnum was informed by Officer Morgan Robinson that inmate Rodney Henry was flooding his cell. When I arrived at N5 their was water coming from under Henrys door and flooding the day room. When I opened Henry cell he told me that he would keep doing with and he was ready to leave this place. I instructed Henry to grab all of his belongings and he was escorted to booking in order to keep him from doing this again. I have nothing further to report at this time.

Doc. No. 28-4, *Incident Reports*, at 13.

On October 21, 2021, Officer Morgan Robinson offered Henry a due process form providing notice that he was charged with violation of "[Rule] B5 – Destroying, defacing, altering, or tampering with existing facility property, including doors, walls, fixtures, security devices, structure, or other parts of the Detention Center

(first offense)." *Id.* at 14.   There is a notation indicating that Henry refused the due process form.  *Id.*   For violation of this rule, Henry was given seven additional days to serve in lockdown.  *Id.*

Officer Robinson offered Henry another due process form the same day, providing notice that he was charged with violation of "[Rule B5] – Destroying, defacing, altering, or tampering with existing facility property, including doors, walls, fixtures, security devices, structure, or other parts of the Detention Center (second offense)." *Id.* at 15.  A notation indicates that Henry refused that due process form too.  *Id.*   For this rule violation, he was given 15 additional days to serve in lockdown.  *Id.*   He was also charged $50 for each magnet he damaged.  *Id.* at 16-17.  Henry was moved to ISO-144 on October 21, 2021, at 5:07 p.m.  Doc. No. 28-5, *Housing Logs,* at 1.  He was ultimately released from lockdown on December 7, 2021.  *Id.*

In November of 2021, Henry submitted several requests and grievances asking when he would be released from the "hole."  Doc. No. 28-3, *Requests and Grievances*, at 4-8.  One of those requests was addressed to defendant Case – Henry asked if he could be released by Thanksgiving, and stated, "I promise the rest of my time here I wont get in no more trouble im sorry and hope you can consider my request." *Id.* at 4.  Case said he would look into it.  *Id.*   Henry also wrote a grievance, stating that his due process rights were violated because he had not received

commissary and his belongings during 48-hour relief breaks and had not received a hearing before being assigned to segregation. *Id.* at 5. That grievance was answered by Dane Barnum, who inexplicably addressed incoming and outgoing mail instead of Henry's complaints. *Id.* Henry did not file any more grievances concerning his due process rights until June 2022. *Id.* at 10-12.

### *Defendants' Affidavits*

According to his affidavit, former Sheriff Steve Franks served as the sheriff of Greene County during the time period at issue in this lawsuit (*i.e.*, May through December of 2021). Doc. No. 28-8, *Affidavit of Steve Franks*, at ¶1. He explained that he employed a chain of command to supervise the employees in his office, and the detention center chain of command was headed by the jail administrator. *Id.* at ¶2. According to Franks, Brent Cox served as jail administrator from May 2021 through July 26, 2021, and defendant Robert Case served as jail administrator from July 26, 2021, through January 1, 2023. *Id.* Franks stated that he would not normally be involved with day-to-day operations at the detention center, such as disciplinary actions or corresponding due process procedures. *Id.* at ¶7. He stated the highest ranking official to participate in due process procedures during the relevant time period at issue in this lawsuit was Dane Barnum. *Id.* Franks also stated that he did not get involved or become aware of any problems associated with due process procedures, such as those alleged by Henry, unless his staff could not resolve an

issue.  *Id.* at ¶¶4-5.  He also stated he had no personal involvement in Henry's disciplinary actions or due process procedures.  *Id.* at ¶8.  Franks further stated he had no contact with Henry in person or by writing, and was not aware of the issues alleged by Henry until Henry filed this lawsuit.  *Id.* at ¶9-11.

According to his affidavit, former jail administrator Robert Case served as the Greene County Jail Administrator from July 26, 2021, through January 1, 2023. Doc. No. 28-9, *Affidavit of Robert Case*, at ¶1.  He stated that the due process procedures in place in 2021 were implemented on May 11, 2021, and provide that an inmate who violates the GCDC rules and procedures will receive a Due Process form.  *Id.* at ¶4. According to Case,

The form will include the following:

a. An option for the inmate to exercise or waive his right to Due Process.

b. List any witnesses in the matter. These witnesses have the right to provide or refuse to provide their statement.

c. The current release date from lockdown if found guilty of accusations.

d. The officer reporting the incident and implementing the sanction.

e. The date of the incident.

f. The name of the inmate.

g. The class and description of violation, along with amount of days applied for each violation.

*Id.* at ¶5 (citing Doc. No. 28-6, *GCDC Policies and Procedures*, at 10 & 17).  Case further explained that the form provides an option for the inmate to state his side of the story by exercising his right to due process, along with listing any witnesses in the matter.  *Id.* at ¶6.  If the inmate waives his right to due process, the disciplinary term will take effect immediately; however, it will still be subject to review by administrative staff.  *Id.* at ¶7.  Case also explained that if an inmate refuses to sign a due process form, it will be treated as a waiver of due process.  Doc. No. 51-1, *Supplemental Affidavit of Robert Case* at ¶ 12.

Once the due process form and voluntary statements, if any, are completed and turned in to a detention officer, these reports will be reviewed by the oncoming shift supervisor, who will be an officer not involved in the incident.  *Affidavit of Robert Case* at ¶8.  Following the review of the due process form, the paperwork will be forwarded to administrative staff for a final review.  *Id.* at ¶9.   In his supplemental affidavit, Case further explained that the inmate would be informed of the reasons for the disciplinary action being upheld or not upheld verbally or in writing.  Doc. No. 51-1, *Supplemental Affidavit of Robert Case* at ¶ 11.

Case also explained in his supplemental affidavit that GCDC did not generally hold in-person disciplinary hearings due to safety and security reasons, unless an inmate was illiterate or otherwise unable to provide his defense in writing.  *Id.* at ¶¶ 6-7.  According to Case, in-person disciplinary hearings create additional safety and

security risks because having inmates charged with rule violations physically present with authority figures, charging officers, and witnesses has the potential to result in confrontation and violent outbursts, while requiring an inmate to present his defense in writing minimizes these safety and security risks. *Id.* at ¶¶ 8-9. He also explained that the GCDC did not have necessary size or staffing to accommodate in-person disciplinary hearings. *Id.* at ¶ 10.

To Case's knowledge, GCDC's due process policy was followed by all GCDC personnel that participated in disciplinary actions and due process procedures during his tenure as the jail administrator. *Affidavit of Robert Case* at ¶10. Case stated that he did not generally participate in disciplinary actions or due process procedures, and was not involved in Henry's disciplinary actions on October 16, 2021, or October 21, 2021. *Id.* at ¶¶11-12, 14. His name is not on any of the incident reports or due process forms. *Id.* Case stated that he did not change Henry's housing assignment in October 2021. *Id.* at ¶11. He also explained that he generally reviewed disciplinary actions only if criminal charges were being pursued. *Id.* at ¶15.

### V. Analysis

#### A.    *Individual Capacity Claims*

The Defendants argue that they are entitled to qualified immunity with respect to Henry's individual capacity claims because he cannot prove they violated his

constitutional rights.[6]  The Court agrees for the reasons described below.

First, Henry seeks to hold the Defendants accountable due to their supervisory positions as sheriff and jail administrator, respectively.  Those claims fail as a matter of law.  *Respondeat superior* is not a recognized basis for § 1983 liability.  *See Keeper v. King*, 130 F.3d 1309 (8th Cir. 1997).  Henry has not alleged that the Defendants were personally involved in his disciplinary proceedings or responsible for his assignment to segregated housing.  *See* Doc. No. 8 at 1 & 2.  Both Defendants submitted affidavit testimony stating they had no involvement in Henry's disciplinaries or the corresponding due process procedures.  Case was not even working at the GCDC in May 2021.  Henry has come forward with no evidence controverting their testimony or showing that they were in any way personally involved in the violations he alleges.  And although he complains about the constitutionality of the GCDC's due process procedures, he does not allege that either Defendant is responsible for creating or implementing that policy.  A

---

[6] Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct.  *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015).  Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

defendant may not be held liable under § 1983 unless he was personally involved in or had direct responsibility for the constitutional violation. *See Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006) ("Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.") (internal quotations and citations omitted).

Second, Henry has not supported his claim that the Defendants should be held liable because they failed to train their subordinates. Doc. No. 2 at 7-8. To assert a constitutional violation based on a defendant's failure to supervise and train staff, a plaintiff must show that the supervisor

> 1) Received notice of a pattern of unconstitutional acts committed by subordinates; 2) Demonstrated deliberate indifference to or tacit authorization of the offensive acts; 3) Failed to take sufficient remedial action; and 4) That such failure proximately caused injury to [Plaintiff].

*Parrish v. Ball,* 594 F.3d 993, 1002 (8th Cir. 2010). The Court further explained,

> The plaintiff must also prove that the alleged failure to train "actually caused" the constitutional deprivation. [*Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)] (applying the same standard from official capacity failure to train to the individual capacity allegation). Thus, it follows that a supervisory officer is entitled to qualified immunity for a § 1983 failure to train action unless a reasonable supervisor would have known that his training program (or lack thereof) was likely to result in the specific constitutional violation at issue. *See Gold v. City of Miami,* 121 F.3d 1442, 1447 (11th Cir.1997) (noting that a supervisor is entitled to qualified immunity unless "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional rights of the plaintiff and his conduct was causally related to the constitutional violation committed by his subordinate" (quotation omitted)).

*Id.*

Henry has not alleged any specific facts or produced any evidence to support a claim based on lack of training or supervision. He does not describe what training or supervision was provided, how the training or supervision was lacking, or how the Defendants had notice that GCDC's procedures were inadequate and were likely to result in a violation of constitutional rights. Henry does not allege that either Defendant had notice of a pattern of unconstitutional acts committed by subordinates related to the claims he asserts; he provides no evidence of any pattern of unconstitutional activity; and he does not allege that the Defendants were aware of any such lack of training or supervision and failed to take remedial action.

Because the Defendants did not violate Henry's constitutional rights, they are entitled to qualified immunity on Henry's due process claims.

## B.   *Official Capacity Claims*

Henry also sues the Defendants in their official capacities. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against the defendants in their official capacities is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). As county employees, the Defendants can only be held liable in their official capacities if Henry can establish that a

constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Henry asserts that the GCDC's disciplinary procedures are unconstitutional under *Wolff v. McDonnell, infra,* because the due process form provided does not contain adequate information to allow for a meaningful defense, because no hearing is held before inmates are sentenced to punitive segregation, and because he did not receive a written statement by the factfinders about the evidence relied on and the reasons for the disciplinary action.

1.   <u>Due Process Protections for Pre-Trial Detainees</u>

Due process requires that a pre-trial detainee cannot be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979); *see also Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("Pretrial detainees are presumed innocent and may not be punished."). However, pre-trial detainees may be subjected to certain restrictions and conditions without due process if necessary to maintain order and security in the jail. *See Bell*, 441 U.S. at 538–40 ("Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.'"). Accordingly, where a detainee is "placed in segregation not as punishment but for managerial reasons" such as "to protect himself from other prisoners, or to protect jail staff from his violent propensities," no due process is required. *Higgs v. Carver*,

286 F.3d 437, 438 (7th Cir. 2002). *See e.g., Hanks v. Prachar*, 457 F.3d 774, 775 (8th Cir. 2006) (holding that incidents of property destruction are arguably constitutionally valid reasons for restraining detainee for short periods, but that longer periods of in-cell restraints would not be justified by such property destruction); *Ferguson v. Cape Giradeau Cty.*, 88 F.3d 647, 650 (8th Cir. 1996) (placing a detainee in a small observation cell for a limited time due to his medical issues and general safety concerns did not constitute punishment requiring due process protections).

Conversely, if the conditions or restrictions imposed on an inmate are deemed punishment, the inmate is entitled to some due process protections.  These due process requirements, set forth in *Wolff v. McDonnell,* include written notice of the charge; a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action; the right of the inmate to be present, call witnesses, and present documentary evidence; and, in limited situations, a counsel substitute.[7]  418 U.S. 539, 564-70 (1974).  The Court further noted that "[p]rison

---

[7] *Wolff* concerned the due process rights of convicted prisoners and did not specifically discuss pre-trial detainees.  418 U.S. 539, 542.  The Supreme Court in *Bell* held that the principles outlined in *Wolff* concerning the balance between a prison's institutional needs and an inmate's constitutional rights applied equally to pretrial detainees and convicted prisoners. 441 U.S. at 546.  Courts have since looked to *Wolff* to determine what process is due pre-trial detainees in disciplinary matters. *See Whitfield v. Dicker,* 41 F. App'x 6, 7 (8th Cir. 2002) (unpublished); *Rupert v. Boyd*, No. 3:17-CV-119-DPM-BD, 2018 WL 1778471, at *1 (E.D. Ark. Apr. 13, 2018); *Neal v. Walker*, No. 4:21-CV-04068, 2023 WL 2954738, at *9 (W.D. Ark. Feb. 1, 2023), *report and recommendation adopted*, No. 4:21-CV-4068, 2023 WL 2496177 (W.D. Ark. Mar. 14, 2023).

disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Id.*

There is no indication on this record that Henry was temporarily segregated from other inmates to protect himself or others; rather, he was sentenced to longer stays in punitive segregation, serving 29 days in the first instance (May 13, 2021, to June 11, 2021) and 52 days in the second instance (October 16, 2021, to December 7, 2021). Accordingly, Henry was entitled to some due process protections before being sentenced to punitive segregation.

### 2.   GCDC's Failure to Hold In-Person Hearings

Henry alleges that the GCDC disciplinary procedure does not provide for in-person hearings. The Defendants do not dispute this, but argue instead that *Wolff* does not necessarily require in-person hearings. They explained:

> During the timeframe at issue within the instant lawsuit, in-person due process hearings were not frequently held. Rather, the inmate had the opportunity to present their defense in writing on the "Inmate Disciplinary Due Process Statement Form," along with the names of any witnesses. GCDC personnel would review the inmate's written statement, and witnesses identified by the inmate were given the opportunity to write a written statement as well. In-person hearings were generally not utilized due to the additional safety and security risks created by having charged inmates in the physical presence of charging officers and witnesses that may have unfavorable statements.

Doc. No. 51 at 2. Additionally, defendant Case provided an affidavit stating that the GCDC did not usually hold in-person hearings due to safety and security reasons. Doc. No. 51-1 at ¶ 6. Specifically, he stated that both moving inmates to a hearing

and having them present with charging officers and other witnesses at an in-person hearing created additional safety and security risks that were minimized if the inmate simply wrote out his or her defense in writing. *Id.* at ¶¶ 8-9. He also explained that the GCDC did not have the capacity to hold in-person disciplinary hearings due to the small size of the facility and the strain on staffing such hearings would cause. *Id.*

The Court agrees with the Defendants that *Wolff* stops short of requiring actual in-person hearings in every disciplinary proceeding. In *Wolff*, the Court recognized the risks to institutional safety that disciplinary proceedings may cause, stating:

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonism on the important aims of the correctional process.

418 U.S. at 562. In light of these concerns, the Court concluded that inmates facing disciplinary proceedings should only be allowed to call witnesses and present documentary evidence if permitting them to do so would not be "unduly hazardous to institutional safety or correctional goals." *Id.* at 566. And finally, the Court concluded that due process did not require confrontation and cross-examination in

disciplinary matters and that whether to allow confrontation and cross-examination was better left to the discretion of prison officials.  *Id.* at 568-69.

In light of *Wolff*'s holding that does not require confrontation and cross-examination, the Court concludes that GCDC's disciplinary procedure is not unconstitutional merely because it does not provide for in-person hearings.

3.    GCDC's Due Process Form

Henry also alleges that he did not receive sufficient notice of the facts supporting the claimed violation or a written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action.

The GCDC's due process form identifies the assigning officer and the alleged rule violation and proposed disciplinary sentence.  *See e.g.,* Doc. No. 28-4.  It allows the inmate to waive due process or exercise his or her right to due process.   It provides no further facts.   There is no evidence in this record that the inmate is provided with the incident report supporting the disciplinary action.  Henry claims he received no written copy of the due process form and that he did not have enough information to prepare his defense.  *See* Doc. No. 2 at 4, 6-7; Doc. No. 32 at 1.

In *Dible v. Scholl*, the Eighth Circuit described what is required in a written notice of a disciplinary infraction.  The Court stated:

> The written notice must be adequate to enable the accused prisoner to "marshal the facts and prepare a defense." *Wolff,* 418 U.S. at 564, 94 S. Ct. 2963; *Freitas v. Auger,* 837 F.2d 806, 809 (8th Cir.1988).  Due process aims "to prevent arbitrary deprivations without threatening

institutional interests or imposing undue administrative burdens."
[*Superintendent v. Hill,* 472 U.S. 445, 455, 105 S. Ct. 2768 (1985)]. To
prevent arbitrary deprivations, the notice should spell out "more than a
conclusory charge; an inmate must receive notice of at least some
specific facts underlying the accusation." *Sira v. Morton,* 380 F.3d 57,
70 (2d Cir.2004) (internal quotation omitted). If known, prison officials
should provide general information about the date, place, and nature of
the alleged misconduct. *Id.* at 72. Specific facts may be withheld,
however, when necessary to protect informants from intimidation and
violent reprisals. *Wolff,* 418 U.S. at 565–66, 94 S. Ct. 2963; *see Freitas,*
837 F.2d at 809.

506 F.3d 1106, 1110 (8th Cir. 2007).  And more recently, this Court has held that a

"threadbare" due process form was insufficient to establish as a matter of law that a

pretrial detainee received due process.  *Rupert v. Boyd*, No. 3:17-CV-119-DPM-BD,

2018 WL 1778471, at *1 (E.D. Ark. Apr. 13, 2018) ("'Without support in the record,

we cannot infer that the lack of specific facts in the disciplinary notice was justified

by countervailing correctional needs.' This record reveals no reason why Rupert

couldn't have been given more particulars about the disciplinary charge at issue."

(quoting *Dible v. Scholl,* supra).

The GCDC's due process form does not meet this standard.  And with no

evidence that Henry received any other information providing the facts underlying

his disciplinary charges (such as an incident report), there remains an issue of fact

as to whether he was afforded due process with respect to the four disciplinary

actions at issue in this case.  I find there is also an issue of fact as to whether Henry

could knowingly waive his due process rights without sufficient information

provided to him regarding the basis for his disciplinary charges.[8]  And finally, *Wolff* requires "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action."  *Wolff,* 418 U.S. at 564.  This record does not show that Henry received any such written statement.  By separate order, I will schedule a bench trial in this case to decide these remaining issues of fact.

4.   Available Relief

Finally, the Court notes that some relief requested by Henry is now moot. Specifically, his request for declaratory and injunctive relief are moot because he is no longer incarcerated at the GCDC.  *See Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985).  The only other relief he requests are nominal and punitive damages which are recoverable in the absence of any physical injury.[9]  *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012); *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004).  An award of one dollar per constitutional violation is recognized as the appropriate amount for nominal damages.  *See Royal v. Kautzky,* 375 F.3d at 724

---

[8] The Court understands that Henry may well have understood the facts underlying each of the disciplinary sentences he challenges.  However, *Wolff* requires written notice of the charges, 418 U.S. at 564, and *Dible v. Scholl* explains that such written notice must be "adequate to enable the accused prisoner to "marshal the facts and prepare a defense." 506 F.3d at 1110.

[9] Because Henry has not alleged any physical injury as a result of the violations he asserts, he may not recover compensatory damages in any case.  *See* 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act.").

(and cases cited therein); *Williams v. Hobbs,* 662 F.3d 994, 1010 (8th Cir. 2011) (holding that the appropriate calculation for nominal damages is one dollar per hearing violation, not one dollar for each day spent in administrative segregation).

## VI.   Conclusion

The Defendants' motion for summary judgment (Doc. No. 26) is GRANTED in PART and DENIED in PART.  Judgment is awarded in favor of the Defendants on Henry's individual capacity claims, and those claims are dismissed with prejudice.  Henry's official capacity claims will be set for a bench trial by separate order.

IT IS SO RECOMMENDED this 27th day of March, 2024.

_____
UNITED STATES MAGISTRATE JUDGE